FILED

JUL 1 2 2018

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 13-30-M-DWM-13 |
|---|---|
| Plaintiff/Respondent, | |
| vs. | ORDER |
| STEVEN GROVO, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Steven Grovo's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Doc. 826.) Grovo is a federal prisoner proceeding pro se.

**I. Preliminary Review**

The motion is subject to preliminary review before the United States is required to respond. The Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But "it

1

is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Comm. Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Comm. Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

### A.   Procedural Background

In November 2013, a grand jury indicted Grovo, along with 13 codefendants, of one count of engaging in a child exploitation enterprise, a violation of 18 U.S.C. § 2252A(g) (Count 1), and one count of conspiring to advertise child pornography, a violation of 18 U.S.C. § 2251(d) and (e) (Count 2). (Doc. 129.) The allegations stemmed from the defendants' activities on a child pornography bulletin board, known as the Kingdom of Future Dreams ("KOFD"). From March 2014 to October 2014, all but one of Grovo's codefendants entered plea agreements with the government and received sentences ranging from 180 to 220 months. On June 5, 2014, a Third Superseding Indictment was filed, charging the same two counts outlined above against only Grovo and one other codefendant, Joshua Petersen. (Doc. 477.) A bench trial was held in October 2014, (*see* Min. Entries, Docs. 604, 606, 609; Trial Trs., Docs. 773, 774, 775), and both Grovo and Petersen were found guilty of both counts charged, (*see* Min. Entry, Doc. 609;

Trial Tr. 553).

A presentence report was prepared. Grovo's advisory guideline range was 360 months to life. Count 1 carried a 20-year mandatory minimum prison sentence upon conviction. Count 2 carried a 15-year mandatory minimum. On January 22, 2015, Grovo was sentenced to 360 months on both counts, to run concurrently, followed by a lifetime term of supervision on each count. (*See* Docs. 740, 742.) Grovo was also held joint and severally liable with his co-defendants for $29,859.00 in restitution, now paid. (Judg., Doc. 742; Order, Doc. 694; Satisfaction of Judg., Doc. 816.)

Grovo appealed, (Notice, Doc. 744), and both his conviction and sentence were affirmed; the amount of restitution was remanded for recalculation. (Docs. 806 (Op.) & 807 (Mem. Dispo.)). Grovo unsuccessfully filed a petition for certiorari to the Supreme Court, (Doc. 814), and his conviction became final February 21, 2017, (Doc. 815). *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on February 5, 2018. 28 U.S.C. § 2255(f)(1).

**B.    Trial**

Grovo went to trial on two counts: one count of engaging in a child exploitation enterprise, a violation of 18 U.S.C. § 2252A(g) (Count 1), and one count of conspiring to advertise child pornography, a violation of 18 U.S.C. § 2251(d) and (e) (Count 2). (*See* Doc. 477.) The government called eleven

witnesses at trial, two codefendants—Robert Krise and Philip Morris—and nine law enforcement officers. Law enforcement initially linked Grovo to KOFD after executing a search warrant on the residence of Paul Wencewicz, the Board's creator, in Polson, Montana. (Trial Tr. 13.) Wencewicz authorized law enforcement to take over his account—user name Dreamer—to access the Board, allowing law enforcement to then identify other members, including Grovo. (Trial Tr. 15.)

After receiving a search warrant for Grovo's home in Massachusetts, law enforcement uncovered a desktop computer used by Grovo, as well as a binder containing printouts of child pornography. (Trial Tr. 37–45; Ex. 6.) The digital devices seized during the search contained images indicative of child pornography. (Trial Tr. 47.) Grovo was interviewed twice during the search. He told law enforcement that he had joined KOFD approximately four years prior and that while "the board itself appeared mainstream on its face[,] . . . it had a hierarchy type process to be able to see or view the child pornography on the site." (Trial Tr. 41.) He also admitted to having downloaded images of child pornography. (Trial Tr. 47.) Grovo was interviewed again at the police station, where he admitted his username on KOFD was "Karomesis." (Trial Tr. 48.)

Investigation into KOFD revealed 28,000 threads and over 300,000 images. (Trial Tr. 253.) KOFD had approximately 40 – 45 members with five possible

4

status levels: Castle Dweller, Castle Resident, Legionnaire, Moderator, and Administrator. (Trial Tr. 101, 103.) Castle Dwellers had the lowest level of access while Moderators and Administrators had the highest. (*Id.*) Based on Karomesis's "user profile," Grovo was a Castle Resident who first registered with the Board on November 10, 2009 and last accessed it on February 27, 2012. (*See* Ex. 121.) Karomesis made over 300 posts on KOFD across a number of forums. (*See* Ex. 292 (listing number of posts by forum).)

There was no evidence that Grovo personally met any of the other KOFD members or that they were aware of his identity. (*See* Trial Tr. 102, 124, 126, 414.) However, Grovo's codefendants testified at trial that they were familiar with the user Karomesis, (Trial Tr. 101 (Krise), 394 (Morris)), and both had directly messaged or emailed with him, (Trial Tr. 102 (Krise), 394 (Morris)). Grovo's codefendants also testified that child pornography was present on the upper levels of the Board, including full nudes, "slip" images, and "see thru" images. (*See* Trial Tr. 105–07 (Krise).) Members could create threads, post messages or other content in reply to an existing posting, or view images without posting anything. (Trial Tr. 111 (Krise); 162 (expert testimony that "Bottom Dwellers" portion of the Board had 435 posts but 1563 views).) Members were encouraged to post and their accounts could be rendered "inactive" if they failed to do so. (*Id.*)

Re-creations of the KOFD Board created by law enforcement showed Grovo

5

was active on the site, (*see* Exs. 178, 180, 227, 228, 231), and as a Castle Resident, had access to certain parts of the upper levels of the Board, including those containing child pornography, (Trial Tr. 189). Karomesis's activity on the Board was tied to a number of posts and comments involving child pornography. (*See* Trial Tr. 291–348; Exs. 227, 227A, 227B, 228, 228A, 228B, 231, 231A, 231B, 234, 234A, 229, 229A, 230, 230A, 232, 232A, 233, 233A, 235, 235A, 258.)

### III. Claims and Analysis

Grovo claims that trial counsel was ineffective in various aspects of his representation related to sentencing. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). At this stage of the proceedings, Grovo must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

A. **Sentencing Enhancements**

Grovo first argues that trial counsel was ineffective in failing to argue that the six-level enhancement he received for a victim under the age of 12 years—four levels under USSG §2G2.6(b)(1)(A), and use of a computer—two levels under USSG §2G2.6(b)(4), violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

6

*Alleyne* held that "[f]acts that increase the mandatory minimum sentence . . . are elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2158. However, *Alleyne* does not apply to Sentencing Guideline factors that increase the Guideline range and not the statutory minimum or maximum sentence. *See United States v. Lizarraga-Carrizales*, 757 F.3d 995, 998–99 (9th Cir. 2014) (finding a district court's denial of safety valve relief did not increase the statutory maximum or minimum as to trigger *Alleyne*); *see also United States v. Harakaly*, 734 F.3d 88, 98 (1st Cir. 2013) ("[The defendant] suggests that *Alleyne* applies more broadly to any fact that "mandate[s] a greater punishment than a court would otherwise have had discretion to impose. We do not read *Alleyne* so expansively.") (internal quotation marks omitted).

Grovo further argues that the four-level enhancement for a victim under the age of 12 under USSG §2G2.6(b)(1)(A) does not apply because "there was absolutely no proof that the alleged 'victims' were directly harmed by [him]." (Doc. 826 at 15.) Grovo relies on the Supreme Court's decision in *Paroline v. United States*, 134 S. Ct. 1710 (2014), to argue that the term "victim" as used in § 2G2.6 has a proximate cause requirement. His reliance on *Paroline* is misplaced.

The *Paroline* decision itself explicitly delineates its purpose: "This case presents the question of how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the

7

pornographic materials possessed." 134 S. Ct. at 1716. Is specifically considers the applicable restitution statute, 18 U.S.C. § 2259, and focuses entirely on proximate cause as it relates to loss, *see Paroline*, 134 S. Ct. at 1718, 1720–20 (Court discussing the specific statutory construction of restitution statutes), 1727 (defining a defendant's "relative role" in the context of "the victim's general losses"), not the broader concept of "harm" Grovo argues.

But, even if Grovo could show counsel's failure to make this legal argument fell outside "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, he cannot show that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The record shows that the members of KOFD harmed children under that age of 12 through posting and sharing of child pornography. KOFD had forums for children under 12 identified by age preference, (*see* PSR, ¶ 17 ("11 and under")), other members of the Board posted images of children under the age of 12, (*see* PSR at ¶ 31 (Morris posted links to forum entitled "Princesses 9 yo and under"), ¶ 39 (Humiston posted thread with several links, stating "There be some wee ones here."), ¶ 88 (Nosek admitted to taking "up skirt" images of his 8 year-old niece and posting to KOFD)), and Grovo himself started a thread with the subject line, "My sin . . . my soul . . . my Adreana (Supermodels 7-17)," (*see* PSR at ¶ 84). Given that the offense at issue was a conspiracy, the activities of the other members of the Board were attributed

8

to Grovo. *See United States v. Grovo*, 826 F.3d 1207, 1220 (9th Cir. 2016).

Because Grovo's arguments lack merit, counsel was not ineffective for failing to raise them. *C.f. Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (holding that counsel was not ineffective for failing to raise meritless objection); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel."). This claim is denied.

### B. Sentencing Disparity

Grovo further argues that counsel was ineffective for failing to argue that the Court's sentence of 360 months created an unwarranted sentencing disparity between Grovo and his codefendants. But counsel preemptively addressed this issue in his allocution, arguing for a sentence commensurate to those with similar conduct on the Board:

> In this case the co-defendants were all sentenced to either 180 months to 224 months. And many of those who were sentenced were leaders/organizers. If Mr. Grovo is to receive the mandatory minimum, it would be 240 months, which would be more than anyone else on the bulletin board. More than Paul Wencewicz. More than any of the group leaders. More than any of the Legionaires. [sic] More than any of those guys by about two years. . . . [B]ased on his role in the bulletin board, I think Grovo should be sentenced to a term of imprisonment that is more similar to those who had a similar role in that bulletin board; and virtually everyone on his level got a sentence of 180 months.

(*Id.* at 35–36.) Counsel then requested the mandatory minimum be imposed. (*Id.* at 36.) In imposing a sentence of 360 months, the Court then addressed this issue

directly:

> I have discussed in some detail what I believe are justifications for the disparate sentence for Mr. Grovo as opposed to the sentences imposed on the other people. And it's primarily based upon his posts and his stated intent that – I think he even quotes Machiavelli, that he's going to – it doesn't matter how hard the problem is or what the impediments are, he's going to ultimately end up, in his words, getting the real thing and he will stop at nothing to obtain it.

(Sentencing Tr., Doc. 777 at 50.) The Court also stated that it was not imposing the longer sentence because Grovo chose to go to trial. (*Id.* at 50–51.) Grovo's guideline calculation also set him apart from his codefendants. Grovo had a criminal history category III and a prior hands on offense. (*See* PSR at ¶¶ 129, 136.) All the other defendants, excepting one, had a criminal history category I. And, only one other defendant had previous related conduct, but it was not hands-on (surreptitious filming of others).

In sum, there is nothing in the record that suggests Grovo's counsel was ineffective at sentencing, much less failed to address the issue of sentencing disparity with his codefendants.[1] This claim is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

---

[1] Grovo's sentence is also commensurate with a number of sentences imposed for child pornography offenses over the last decade in the District of Montana. *See United States v. Brister*, CR 12-20-M-DLC (400 months); *United States v. Smith*, CR 11-06-H-DWM (360 months); *United States v. Shouse*, CR 12-71-GF-DLC (600 months); *United States v. Sheldon*, CR 12-10-H-CCL (480 months).

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). None of Grovo's claims meet even the relatively low threshold required for a COA. Grovo does not identify any respect in which counsel's performance was unreasonable. Nor does he identify any reasonable probability of a different outcome if counsel had done anything differently. While Grovo's legal argument under *Paroline* arguably presents a question of first impression, it lacks merit and does not rise to the level of "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Grovo's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 826) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Petersen files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 18-17-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Petersen.

DATED this 12th day of July, 2018.

15:48 P.M.

Donald W. Molloy, District Judge
United States District Court